# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ANDREA J. WHITE,**

      **Plaintiff,**

v().                                                                                                    **Case No:   6:15-cv-814-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OF DECISION

Andrea J. White (the "Claimant") appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB"). Doc. No. 1. Claimant alleges an onset of disability as of April 21, 2010, primarily due to traumatic brain injury, nerve damage, depression, anxiety, and a memory impairment all of which are secondary to a motor vehicle accident. R. 25, 85, 111, 118. Claimant is insured for DIB through December 31, 2015. R. 85. Claimant argues that the Administrative Law Judge (the "ALJ") erred by failing to demonstrate good cause, supported by substantial evidence for rejecting the opinions, or portions thereof, of Claimant's treating neurologist and neuropsychologist. Doc. No. 16 at 22-30.[1] For the reasons that follow, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings.

---

[1] Claimant also argues that the ALJ's decision to reject the opinion of a consultative examining physician is not supported by substantial evidence. Doc. No. 16 at 29-30. For the reasons set forth below, the ALJ's handling of the treating physicians' opinions is dispositive.

I.     **THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

II.    **STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## III.  ANALYSIS.

At the center of this dispute are the medical opinions and treatment records from Claimant's treating neurologist, Dr. Ronald J. Turck, J.R., and Claimant's treating neuropsychologist, Dr. Giles Rainwater, Ph.D. R. 323-29, 332-34, 397-405, 434-41, 448-51, 677-81. Dr. Turck offered one (1) medical opinion (R. 677-81), and Dr. Rainwater provided three (3) medical opinions (R. 323-29, 332-34, 435-38). All of the respective treating physicians' opinions are more restrictive than the ALJ's residual functional capacity assessment (the "RFC"). *Id.*; R. 28.[2]

---

[2] In his decision, the ALJ determined that Claimant retains the following RFC:

> The claimant has the [RFC] to perform light work . . . except that she can only occasionally climb stairs, stoop, balance, kneel, crouch, or crawl. The claimant can perform simple, routine, and repetitive tasks that require no more than

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. In cases like this one, involving the ALJ's handling of such medical opinions, "substantial-evidence review . . . involves some intricacy." *Gaskin v. Commissioner of Social Security*, 533 F. App'x. 929, 931 (11th Cir. Aug. 14, 2013) (unpublished).[3] In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis; what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement constitutes an opinion, which requires the the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error).

Absent good cause, the opinion of a treating physician must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The Eleventh Circuit

---

occasional changes in the work setting or routine. She is limited to jobs that require no more than occasional interaction with coworkers, supervisors, and the public.

R. 28.

[3] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

has held:

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."

*Johnson v. Barnhart*, 138 F. App'x 266, 270 (11th Cir. 2005) (unpublished) (quoting *Phillips* v. *Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)). Thus, good cause exists to give a treating physician's opinion less than substantial weight where the ALJ demonstrates in the decision that the physician's opinion is not bolstered by the evidence in the record, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records. *Id*.

**A. Dr. Turck.**

Dr. Turck treated Claimant on three (3) occasions from October 5, 2012 through February 18, 2013. R. 397-405, 448-51, 678. On each occasion, Claimant complained of headaches. R. 398, 401, 449. On February 18, 2013, Claimant reported that she was experiencing severe daily headaches since undergoing a failed epidural steroid injection. R. 449. As the ALJ expressly notes in his decision, Dr. Turck "prescribed topical Lidocaine for the claimant's head pain." R. 33 (citing R. 451). During his treatment of Claimant, Dr. Turck diagnosed her with the following conditions: organic brain syndrome; traumatic brain injury; abnormal brain scan; anxiety; cephalgia (headaches); and chronic degenerative disk disease. R. 400, 403, 451.

On April 25, 2013, Dr. Turck provided a Headaches Medical Source Statement. R. 678-81. Dr. Turck opined that Claimant experiences the following two (2) types of headaches: post concussion syndrome, possibly chronic, and cervical generated headaches. R. 678. Dr. Turck stated that those headaches cause the following symptoms: an inability to concentrate; and radiating pain along the trapezius and right ear. R. 678. Dr. Turck opined that Claimant

experience headaches 7 days a week, 24 hours a day, but he does not state which type of headache Claimant is experiencing at all times. R. 678. He stated that Claimant's anxiety/tension, cervical disc disease, and history of head injury reasonably explain Claimant's headaches. R. 679. Dr. Turck opines that Claimant's headaches are caused by neck movement and medications make Claimant's headaches better. R. 679. In response to a question asking "what degree can your patient tolerate work stress," Dr. Turck opined that she is capable of low stress work because her anxiety is worsening. R. 679. Dr. Turck stated that he has treated Claimant's headaches with local therapies and medication, but those treatments have only achieved minimal relief, and the next step is to add oral medications. R. 680.

Dr. Turck opined that Claimant's prognosis is good, but her headaches have "lasted or can . . . be expected to last at least twelve months." R. 680. Dr. Turck further opined that Claimant's headaches will generally preclude Claimant from "performing even basis work activities," and she will need an unscheduled break to lay down possibly once a week for 30 minutes to 1 hour. R. 680. Finally, Dr. Turck opined that Claimant's headaches are severe enough to interfere with Claimant's attention and concentration to perform simple tasks, not counting regular breaks, approximately 10% of the typical workday, and Claimant can be expected to miss work about four days per month on average due to her impairments. R. 680.

At the April 10, 2013 hearing, Claimant testified that she experiences two (2) types of headaches, one which occurs every day and one which occurs four or five times a month. R. 45, 64-66. In the ALJ's July 31, 2013 decision, the ALJ notes that Dr. Turck "prescribed topical Lidocaine for the claimant's head pain." R. 33 (citing R. 451). However, the ALJ rejects Dr. Turck's opinion, both at step-two and in determining Claimant's RFC, because "[s]he takes no medication for headaches and her history of headaches has not persisted for at least 12 months."

R. 34. The record and the ALJ's decision clearly show that Clamant treated her headaches with Lidocaine. R. 33 (citing R. 451). Moreover, Dr. Turck expressly opined that Claimant's headaches have lasted or can be expected to last at least 12 months, and the record shows that Claimant experienced chronic headaches as early as July 29, 2010. R. 597 (Dr. Devin Datta, M.D. diagnosing Claimant with chronic neck pain associated with headaches), 680 at ¶ 17. Accordingly, the ALJ's stated reasons for rejecting Dr. Turck's opinion are not supported by substantial evidence.

As set forth above, the ALJ also rejected Dr. Turck's opinion at step-two of the sequential evaluation process. R. 26. The ALJ's analysis of Dr. Turck's opinion at step-two contains several misstatements of fact. R. 26. First, the ALJ states that Claimant first began complaining of headaches to Dr. Turck in February of 2013. R. 26. To the contrary, Claimant complained of headaches at each appointment with Dr. Turck, beginning on October 5, 2012. R. 398, 401, 449. Second, the ALJ rejects Dr. Turck's opinion, in part at step-two, based upon the ALJ's mistaken belief that Claimant testified to only experiencing a headache 4 to 5 times per month. R. 26 (ALJ finding Dr. Turck's opinion "inherently inconsistent" with Claimant's testimony that "she experiences headaches several times a month, not all the time."). As set forth above, Claimant testified that she experiences two types of headaches, one type occurring daily and one type occurring 4 to 5 times per month. R. 64-66. Thus, the ALJ misstates the Claimant's testimony and improperly rejects Dr. Turck's opinion based upon that misstatement.

Third, the ALJ's statement that Claimant did not receive treatment for headaches is directly contradicted by Dr. Turck's treatment records and the ALJ's own decision. *Compare* R. 26 ("Despite the claimant's lack of treatment for headaches, . . . Dr. Turck issued a medical source statement indicating that Claimant experiences chronic head pain. . . .") (emphasis added) *with* R.

26 ("The record reflects that the claimant began reporting headaches to Dr. Turck . . . [and] . . . Dr. Turck prescribed topical Lidocaine for pain relief."), R. 33 (explaining Claimant's treatment with Dr. Turck for headaches).  Based on the foregoing, the ALJ's rejection of Dr. Turck's opinion at step-two is not supported by substantial evidence.  R. 26.

Based on the ALJ's errors with respect to Dr. Turck's opinion, the case must be reversed and remanded for further proceedings.  Nevertheless, the Court will briefly address the ALJ's errors with respect to Dr. Rainwater's opinions.

### B.  Dr. Rainwater.

Claimant underwent fifteen (15) psychotherapy sessions with Dr. Rainwater from January 23, 2012 through June 13, 2012 (R. 439-41), and Dr. Rainwater performed at least one (1) neuropsychological evaluation (R. 323-29).  Dr. Rainwater's psychotherapy notes reveal the following: Claimant continues to experience cognitive issues relating to her brain injury, which are exacerbated by emotional triggers; Claimant struggles to perform simple household activities such as cooking and cleaning; and Claimant experiences anxiety about driving.  R. 439-41.

In January of 2012, Dr. Rainwater conducted a battery of psychological tests on Claimant.  R. 324-29.  Those tests were positive for a mild memory impairment and severe depression.  R. 325-26.  Based upon testing, Dr. Rainwater diagnosed Claimant with the following impairments: Cognitive Disorder secondary to motor vehicle accident "with specific memory impairment"; moderate adjustment disorder with depression and anxiety; psychological factors affecting cognitive abilities; and compulsive traits.  R. 328-29.  Dr. Rainwater further opined that: test results are consistent with a traumatic brain injury; "test results indicate she is probably not able to resume her demanding occupation until she makes some improvement, which probably will

occur"; the results do not interfere with her ability to cook, manage finances, stay lone, or go out by herself; and Claimant should undergo counseling and cognitive rehabilitation. R. 329.

On February 28, 2012, after completing six (6) psychotherapy sessions with Claimant, Dr. Rainwater provided a Treating Source Mental Status Report, opining as follows: Claimant has a depressed and anxious mood; Claimant has a compulsive and unrealistic standard for herself; Claimant has a mild concentration impairment and mild memory impairment; Claimant alternates between a perfectionist and a depressed avoidant; Claimant's prognosis is fair over the next 6 to 12 months; Claimant is competent to manage funds and she can take care of her needs and her child's basic needs, but "she is not yet able to manage household without considerable help from husband"; and Claimant's cognitive disorder, depression and anxiety prevent her from sustaining work activity for 8 hours a day, five days a week. R. 332-34.

On June 28, 2012, after completing fifteen (15) psychotherapy sessions, Dr. Rainwater provided a Mental Impairment Questionnaire, opining as follows: Claimant's neuropsychological test results show impaired memory and a mild over all cognitive impairment secondary to a motor vehicle accident; Claimant's prognosis is good for "some improvement"; Claimant's psychiatric condition exacerbates her experience of pain because her adjustment disorder causes additional cognitive interference; Claimant is moderately limited in her ability to perform activities of daily living, maintain social functioning, and maintain concentration, persistence or pace; Claimant's impairments will last for a least twelve months and will cause her to be absent more than four days per month; and Claimant will also have difficulty working on a sustained basis due to her memory impairment. R. 435-41. Thus, Dr. Rainwater's February 28, 2012 and June 28, 2012 opinions both indicate that Claimant's limitations prevent her from sustaining full time work.

In the decision, the ALJ gives Dr. Rainwater's June 28, 2012 opinion greater weight than the opinions of the state agency physicians "because Dr. Rainwater's assessment is slightly supported by the claimant's testimony." R. 36 (citing R. 434-38). Nevertheless, the ALJ expressly rejects Dr. Rainwater's June 28, 2012 opinion that Clamant will miss at least four days of work per month because Claimant is capable of caring for her child, attending various appointments, cooking, cleaning, and grocery shopping. R. 36. The ALJ cites to Dr. Rainwater's June 28, 2012 opinion and to his treatment notes in support of the ALJ's finding that Claimant is capable of attending work on on a regular schedule, cooking, cleaning, driving, and attending appointments. R. 36 (citing R. 434-41). Yet, the records cited by the ALJ demonstrate that Claimant has great difficulty cooking and cleaning, and Dr. Rainwater has specifically opined that Claimant cannot manage her household with considerable assistance. R. 334, 439-41. Thus, the ALJ's decision is internally inconsistent and it is unclear why the ALJ is giving the greatest weight to Dr. Rainwater's June 28, 2012 opinion and also rejecting the most prominent finding therein. On this record, the Court finds that the ALJ has not demonstrated good cause, supported by substantial evidence for rejecting critical portions of Dr. Rainwater's opinions. *See Monte v. Astrue*, Case No. 5:08-cv-101-Oc-GRJ, 2009 WL 210720, at *6 (M.D. Fla. Jan. 28, 2009) (reversal required whether ALJ fails to sufficiently articulate reasons for rejecting portions of medical opinion while accepting others). Accordingly, the ALJ's errors with respect to Dr. Rainwater's medical opinions independently warrant remand for further proceedings.[4]

## IV.   CONCLUSION.

---

[4] The ALJ's above-stated errors are dispositive of this case. *See supra* pp. 3-11. Therefore, it is unnecessary to address Claimant's remaining arguments (*see supra* n.1). *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Social Sec. Admin.*, -- F. App'x --, 2015 WL 5166045, at *3 (11th Cir. Sept. 4, 2015) (unpublished) (no need to analyze other issues when case must be reversed due to other dispositive errors).

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** the for further proceedings pursuant to sentence four of Section 405(g); and

2. The Clerk is directed to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

**DONE and ORDERED** in Orlando, Florida on August 12, 2016.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record